UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
_____

RICKY "BIRD" CLARKSON,

        CASE NO.

    Plaintiff,        Hon.

v.

CENTRAL MICHIGAN UNIVERSITY BOARD OF TRUSTEES,
DEAN JEFFERSON CAMPBELL,
HEATHER TROMMER-BEARDSLEE, and
KEELEY STANLEY-BOHN,
in their individual and official capacities,

    Defendants.
_____

# COMPLAINT AND JURY DEMAND
_____

### COMPLAINT

Plaintiff Ricky "Bird" Clarkson, by and through his attorneys, Pinsky Smith, PC, states as follows:

### JURISDICTION, VENUE, AND PARTIES

1. This is an action requesting the Court to remedy violations of Title VII of the Civil Rights Act of 1964 ("Title VII", 42 U.S.C. § 2000e *et seq.* and factually related violations of the Elliott-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2101, *et seq.*, in addition to violations of the First Amendment to the U.S. Constitution, pursuant to 42 U.S.C. § 1983.

2. Jurisdiction and venue are proper in this Court.

1

3. Plaintiff is a Black male resident of Isabella County, within the Eastern District of Michigan.

4. Central Michigan University ("The University" or "CMU") is a public Michigan university, located in Isabella County, within the Eastern District of Michigan. It is governed by Defendant CMU Board of Trustees ("CMU").

5. Defendant Jefferson Campbell was, at all relevant times, an employee and agent of Defendant CMU and was employed as the Dean of the College of Arts and Media at CMU. Upon information and belief, Defendant Campbell is a resident of Isabella County and is a white male.

6. Defendant Heather Trommer-Beardslee was, at all relevant times, an employee and agent of Defendant CMU and was employed as the Director of the Dance Program. Upon information and belief, Defendant Trommer-Beardslee is currently a resident of Isabella County and is a white female.

7. Defendant Keeley Stanley-Bohn was, at all relevant times, an employee and agent of Defendant CMU and was employed as Chairperson of CMU's Department of Theatre and Dance ("TAD"). Upon information and belief, Defendant Stanley-Bohn is currently a resident of Isabella County and is a white female.

8. The acts that are the subject of this action occurred in the Eastern District of Michigan.

## FACTUAL ALLEGATIONS

9. CMU employed Plaintiff, known as "Professor Bird," as a faculty member of its Dance Department for nearly 15 years, beginning in 2009.

2

10. Professor Bird has been the only member of CMU Dance Department faculty who is Black for at least the last twenty years.

11. Defendant Trommer-Beardslee was hired as a fixed-term faculty member in or around 2010 and became Director of the Dance Program shortly thereafter.

12. In addition to his classes, Professor Bird sought ways to contribute to the Dance Department in whatever ways he could, including outside of his contract with the Dance Department. For example, he frequently offered free dance classes in public spaces on campus for the purpose of assisting students with their technique.

13. Professor Bird also manages a traveling dance crew called the Pursuit of Ahhwesomeness ("POA"), which provides young dancers opportunities to travel and compete all over the country in world-class competitions.

14. During his tenure with CMU, Defendants, particularly Defendant Trommer-Beardslee, routinely denied Professor Bird opportunities, attempted to limit his involvement or exclude him from the Dance Department, singled him out and disparaged him to students, and otherwise discriminated against him, on account of his race.

15. Defendants only ever offered Professor Bird the option to teach Hip-Hop dance classes—as the stereotypical form of dance that Defendants believed he could teach because of Plaintiff's race, when he is trained and proficient in many other forms of dance as well. White faculty members were offered a variety of

classes to teach, while Professor Bird was denied the same.

16. Defendant Trommer-Beardslee's efforts to discriminate and harass Professor Bird due to his race intensified in or around the year 2021, when the Dance Department added a Dance Major for students.

17. Until fall of 2022, Defendant Trommer-Beardslee was the only full-time Dance Department faculty member, and the rest of the faculty (including Professor Bird) were all part-time faculty members.

18. By the fall of 2022, the Dance Department employed two full-time fixed-term faculty members (Trommer-Beardslee being one of them), and it continued to employ three part-time fixed-term faculty members (Professor Bird being one of them).

19. Defendant Trommer-Beardslee began singling Professor Bird out as the only Black faculty member, including disparaging him to students, saying he was "just a guy" who "teaches sometimes," instead of referring to him as a professor—which was an attempt to discredit him with students and reduce the enrollment numbers for his class.

20. Defendant Trommer-Beardslee did everything she could to prevent his involvement in the Dance Department. When teachers or students requested his assistance or involvement, she routinely created a pretextual justification to have him prohibited from participating.

21. Defendant Trommer-Beardslee also discriminatorily denied him the opportunity to choreograph for the Spring Faculty Dance Concert twice, once in

4

2019 and again in 2023. This opportunity was important for career, advancement, and prestige in the CMU Dance Department.

22. Professor Bird choreographed a dance for the faculty dance concert every single year that he worked for CMU, except the two years that Defendant Trommer-Beardslee refused to allow him to do so. At the time she prohibited him from participating, he was also the longest-standing member of the Dance Department Faculty and had choreographed more numbers for the faculty dance concert than any other member of the Dance Department faculty.

23. In 2019, Defendant Trommer-Beardslee blamed her denial on the fact that his class had been cancelled that semester, so she said he wasn't technically a member of the faculty that year. However, other years, White professors who were not actively teaching that semester were still allowed to choreograph (once in 2021 and then again in 2022)—indicating a double standard that only applied to Professor Bird.

24. In 2023, Defendant Tommer-Beardslee claimed Professor Bird couldn't choreograph because he wasn't a full-time faculty member—yet another new and discriminatory reasoning she applied to only Professor Bird, while allowing the part-time White faculty members to continue to choreograph that year.

25. In 2023, Defendant Trommer-Beardslee for the first time also prohibited Professor Bird from even attending the student auditions, claiming that his presence would make the students feel "uncomfortable." She did not offer a further explanation of what she meant by that.

5

26. Other concerts and choreographing opportunities were often offered by Defendant Trommer-Beardslee, and at least the opportunities went through her— which discriminatorily impacted Professor Bird as well. Trommer-Beardslee prohibited Professor Bird from participating in auditions, and she even invited non-dance faculty to come judge choreography when needed.

27. She also targeted him as an instructor — seeking out his adult students and interrogating them about who was coming to the voluntary and free sessions he offered on campus (on his own personal time) and what he was teaching them.

28. Defendant Trommer-Beardslee questioned Professor Bird's adult students who travelled with him for dance competitions in a manner attempting to falsely insinuate that Professor Bird was doing something wrong, and she attempted to prevent them entirely from travelling with him.

29. Defendant Trommer-Beardslee accused Professor Bird of "working against the [Dance] Department" by offering students opportunities outside CMU where those were appropriate to student development.

30. She asked students if they felt "safe" with Professor Bird, and if their parents knew they were traveling with him and were "ok" with it. Defendant Trommer-Beardslee did not ask the students traveling with White professors these same, offensive questions.

31. When students needed to rearrange schedules to accommodate for the travel with Professor Bird, Defendant Trommer-Beardslee instructed faculty to

6

deny the accommodation requests.

32. Defendant Trommer-Beardslee claimed she was concerned for the students because Professor Bird was the only faculty member who was traveling with them to non-CMU affiliated events—but White faculty members had previously done so without any objection from Trommer-Beardslee.

33. The Dance Department had a practice of promoting faculty dance events, yet Defendants routinely refused to promote any event or activity connected to Professor Bird. For example, Defendant Trommer-Beardslee prohibited him from contacting CMU dance students for opportunities to dance for POA. In addition, she (along with Defendant Stanley-Bohn) threatened to create contracts with Dance major students to prevent them from working with him, and they in fact retaliated against the students who attended competitions with Professor Bird.

34. In December 2022, Professor Bird and another faculty member (Professor Terri Hansen) received a Diversity, Equity and Inclusion grant, and they used the funds to offer a class project called "YOU CAN WIN!," intended to address students facing challenges of racism and other discriminations. Professor Bird was to teach one portion of the class.

35. When Professor Hansen submitted the announcement for the Dance Department to issue, Defendant Stanley-Bohn refused the announcement—stating that Professor Bird needed approval to do this, even though it was voluntary, and cited an alleged policy violation. Defendants did not attend the event or promote it (when they promoted other similar events from other Dance faculty members).

7

36. On January 11, 2023, Defendants Trommer-Beardslee and Stanley-Bohn met with Professor Bird, at which point Professor Bird reported the issues he was having with Trommer-Beardslee and that he felt he was being discriminated against based on his race. He also reported that Dance students were being discriminated against by Trommer-Beardslee on account of race as well. During this conversation, Trommer-Beardslee at first denied having questioned Professor Bird's students at all, but she eventually admitted it.

37. The next day, on January 12, 2023, Defendant Trommer-Beardslee asked Professor Bird to research curriculums to start a new minor in Hip-Hop or West African Dance, alleging that the Department was looking to hire him as a full-time professor. Not only is this offer discriminatory as it again relies on a racist stereotype, but it was also not a serious offer. Upon information and belief, Trommer-Beardslee extended this alleged offer only as a red herring, designed to cover up the racial discrimination and harassment she'd inflicted on him for years once Professor Bird raised the issue.

38. On January 13, 2023, Professor Bird met with Dean Jefferson Campbell, who told Professor Bird that he believed Professor Bird had been "devalued" at CMU and that he intended to rectify the situation. However, nothing substantive came from Dean Campbell's assertion that he intended to rectify the situation.

39. Professor Bird also met with then-CMU President Robert Davies in January of 2023. Professor Bird reported the race discrimination and harassment

8

he and Dance students were facing to President Davies, who told him to take the matter to the University's internal Office of Civil Rights and Institutional Equity ("OCRIE").

40. Shortly thereafter, on January 25, 2023, Professor Bird met with OCRIE to discuss filing a complaint against the Dance Department for race discrimination.

41. Professor Bird submitted his finalized complaint to OCRIE on March 22, 2023.

42. In response to his complaint, OCRIE initiated an investigation led by two investigators from an outside firm, Rebecca Leitman Veidlinger, PLLC.

43. Subsequently, Defendants Trommer-Beardslee and Stanley-Bohn retaliated against Professor Bird further for filing his OCRIE complaint.

44. For example, Defendant Stanley-Bohn initiated a peer review and an outside review of Professor Bird for the first time in his entire employment with CMU.

45. Although Dean Campbell initially appeared to support Professor Bird, even so far as telling Professor Bird he did not need to participate in Defendant Stanley-Bohn's peer review of him, Dean Campbell later changed his mind without explanation and supported Defendant Stanley-Bohn's actions against Professor Bird.

9

46. Somehow, the police were called on Professor Bird for holding a dance practice with students in the public entrance of the CMU Atrium—where he had been holding practices for many years.

47. On April 14, 2023, Defendant Stanley-Bohn sent Professor Bird a re-appointment letter for the fall 2023 semester, indicating that "details" for which classes he'd be teaching would be "forthcoming."

48. A few weeks later, Defendant Stanley-Bohn emailed Professor Bird again, indicating that the class to which he had apparently already been assigned was "in danger of being cancelled for the Fall semester." Upon information and belief, the alleged "low enrollment" was directly to Defendants' efforts to prevent students from taking Professor Bird's class.

49. On July 21, 2023, CMU informed Professor Bird that his class was going to be cancelled for the fall semester, but that the Dance Department would reach out to him if anything changed or for the following Spring 2024 semester.

50. Professor Bird's class had been cancelled due to low enrollment in the past, yet he remained involved in the CMU community, and his class would resume when enrollment numbers inevitably increased in a subsequent semester, as the class had been part of student requirements and students would eventually have to take the class.

51. The Department never reached out to Professor Bird again.

52. Upon information and belief, Defendants continued to discourage student enrollment in Professor Bird's class.

10

53. Professor Bird learned later that *Defendants removed Professor Bird's class as an offering entirely for the Spring of 2024 without telling him* (as well as removed it as a requirement of the curriculum)—ensuring that he would and could never teach at CMU again.

54. Finally in April 2024, the OCRIE issued a report on Professor Bird's complaints of discrimination. In the report, the OCRIE investigators detail the documents they reviewed and the witnesses with whom they spoke, listing many facts in support of Professor Bird's 11 allegations of racism.

55. Ultimately, the investigators found that Defendant Trommer-Beardslee engaged in race-based discrimination on the following counts:

    a. Trommer-Beardslee denied Clarkson the opportunity to choreograph while approving opportunities to choreograph for white faculty based on his race; and

    b. Beginning fall 2021, Trommer-Beardslee, because of Clarkson's race, asked white students who worked with Clarkson about their experience and safety when dancing or traveling with Clarkson, when she did not ask a Black student who worked with Clarkson the same questions.

56. After receiving this report, CMU and Defendants did nothing to rectify the racism Professor Bird experienced, even as substantiated by its own internal investigation. Professor Bird reached out to both OCRIE and CMU Administration, and he was told to expect a response—but one never came.

<u>Statutory Prerequisite</u>

57. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the commission of the unlawful employment practice alleged herein.

58. Plaintiff received a Notice of Right to Sue from the EEOC prior to initiating this lawsuit.

59. This action has been filed 90 days of the receipt of Plaintiff's Notice of Right to Sue.

<u>COUNT I – Violation of Title VII of the Civil Rights Act of 1964 –
Race Discrimination and Retaliation</u>

60. Plaintiff relies on the allegations of all prior paragraphs as if they were restated herein.

61. Defendants violated Title VII of the Civil Rights of 1964, 42 U.S.C. § 2000e, when they discriminated against and harassed Plaintiff, treated him differently than other employees, and ultimately constructively terminated him based on his race.

62. Defendants also violated Title VII when they retaliated against Plaintiff for making a report of unlawful race discrimination. This retaliation includes but is not limited to Defendants' efforts to ensure that there was no demand for Plaintiff's offered classes, and as a result, eventually ending his employment with CMU.

63. Defendants' purported reasons for terminating Plaintiff and taking various other adverse employment actions against him are pretext for illegal discrimination and retaliation.

64. Plaintiff has suffered irreparable harm, in that he has been unlawfully terminated, and he has suffered significant financial losses as a result. He will continue to suffer such harm unless the relief requested herein is granted.

## COUNT II –Violation of the Elliott-Larsen Civil Rights Act – Race Discrimination and Retaliation

65. Plaintiff relies on the allegations of all prior paragraphs, as if they were restated herein.

66. Defendants violated the Elliott-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2101, *et seq.*, when they discriminated against and harassed Plaintiff, treated him differently than other employees, and ultimately constructively terminated him based on his race.

67. Defendants also violated ELCRA when they retaliated against Plaintiff for making a report of unlawful race discrimination. This retaliation includes but is not limited to Defendant's efforts to ensure that there was no demand for Plaintiff's offered classes, and as a result, eventually ending his employment with CMU.

68. Defendants' purported reasons for terminating Plaintiff and taking various other adverse employment actions against him are pretext for illegal discrimination and retaliation.

69. Plaintiff has suffered irreparable harm, in that he has been unlawfully terminated, and he has suffered significant financial losses and non-economic

13

damages as a result. He will continue to suffer such harm unless the relief requested herein is granted.

## COUNT III – Violation of the First Amendment to the U.S. Constitution - 42 U.S.C. § 1983

70. Plaintiff relies on the allegations of all prior paragraphs, as if they were restated herein.

71. Plaintiff made multiple statements complaining about the race-based discrimination and harassment he and others experienced at CMU.

72. Defendants violated Plaintiff's First Amendment rights when they further discriminated against, harassed, and retaliated against Plaintiff because of his speech and complaints.

73. Plaintiff has suffered irreparable harm, in that he has been unlawfully terminated, and he has suffered significant financial losses as a result. He will continue to suffer such harm unless the relief requested herein is granted.

## RELIEF SOUGHT

WHEREFORE, Plaintiff requests that the Court grant the following relief:

A. Award Plaintiff economic damages in an amount designed to make him whole and replace that which was denied or lost to him by reason of violations of law by Defendants.

B. Order that Plaintiff be reinstated to his teaching position at CMU and that all measures to artificially remove student demand for Plaintiff's class(es) cease;

C. Award Plaintiff compensatory damages for mental anguish and emotional distress;

D. Award Plaintiff exemplary damages;

E. Award Plaintiff costs and reasonable attorney fees;

F. Award Plaintiff such other relief as may be just and equitable.

PINSKY SMITH, PC
Attorneys for Plaintiff

Dated: July 18, 2025

By: /s/ Sarah R. Howard
Crystal J. Bultje
Sarah Riley Howard
146 Monroe Center, N.W., Suite 418
Grand Rapids, MI 49503
(616) 451-8496
cbultje@pinskysmith.com
showard@pinskysmith.com

## JURY DEMAND

To the extent that jury trial is available as to any of the issues set forth above, Plaintiff hereby demands same.

PINSKY SMITH, PC<br>Attorneys for Plaintiff

Dated: July 18, 2025                                  By: /s/ Sarah R. Howard
                                                          Crystal J. Bultje
                                                          Sarah Riley Howard
                                                          146 Monroe Center, N.W., Suite 418
                                                          Grand Rapids, MI 49503
                                                          (616) 451-8496
                                                          cbultje@pinskysmith.com
                                                          showard@pinskysmith.com