## `UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

RICKY "BIRD" CLARKSON,

      Plaintiff                Case No. 1:25-cv-12209

v.                                   Hon. Thomas L. Ludington

CENTRAL MICHIGAN UNIVERSITY
BOARD OF TRUSTEES, DEAN JEFFERSON
CAMPBELL, HEATHER TROMMER-
BEARDSLEE and KEELEY STANLEY-BOHN,
in their individual and official capacities,

      Defendants

_____/

## DEFENDANT CENTRAL MICHIGAN UNIVERSITY BOARD OF TRUSTEE'S MOTION FOR JUDGMENT ON THE PLEADINGS

NOW COMES, Defendant Central Michigan University Board of Trustees, ("CMU") by and through its attorneys, Fraser Trebilcock Davis Dunlap & Cavanaugh, P.C., and for its Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c), states as follows:

CMU brings this motion with respect to the First Amended Complaint, which was filed on August 20, 2025 (ECF No. 9). For the reasons stated in the accompanying brief, which are incorporated herein by reference, the single claim asserted against CMU in this action under Title VII, 42 U.S.C. § 2000e is time barred and not actionable.

WHEREFORE, Defendant Central Michigan University Board of Trustees respectfully requests that the Court GRANT its Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c) and that the Court enter an Order that dismisses the Title VII claim with prejudice and dismisses CMU as a party.

*Respectfully submitted*,

Dated: September 15, 2025          By:  */s/ Ryan Kauffman*
                                         Ryan K. Kauffman (P65357)
                                         Fraser Trebilcock Davis Dunlap & Cavanaugh, P.C.
                                         Attorneys for Defendants

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

RICKY "BIRD" CLARKSON,

     Plaintiff                    Case No. 1:25-cv-12209

v.                                 Hon. Thomas L. Ludington

CENTRAL MICHIGAN UNIVERSITY
BOARD OF TRUSTEES, DEAN JEFFERSON
CAMPBELL, HEATHER TROMMER-
BEARDSLEE and KEELEY STANLEY-BOHN,
in their individual and official capacities,

     Defendants

_____/

## DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION
## FOR JUDGEMENT ON THE PLEADINGS

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

CONCISE STATEMENT OF ISSUE PRESENTED ....................................................................... ii

MOST APPROPRIATE AUTHORITY ........................................................................................ iii

STATEMENT OF FACTS ........................................................................................................... 1

    A.   Background Information ............................................................................................ 1

    B.   Plaintiff's claims of discrimination and retaliation .................................................. 6

    C.   Plaintiff's Title VII claim against CMU ................................................................... 8

STANDARD OF REVIEW ......................................................................................................... 8

LEGAL ARGUMENT ................................................................................................................. 9

    A.   A review of the First Amended Complaint reveals that Plaintiff's Title VII claim is untimely and not actionable. .................................................................................... 9

    B.   The remaining allegations in the First Amended Complaint fail to assert a timely Title VII claim.................................................................................................................. 14

CONCLUSION ......................................................................................................................... 18

CERTIFICATION OF COMPLIANCE ..................................................................................... 19

CERTIFICATE OF SERVICE ................................................................................................... 19

## <u>CONCISE STATEMENT OF ISSUE PRESENTED</u>

The First Amended Complaint asserts a single count against Central Michigan University Board of Trustees ("CMU") for Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (ECF No. 9, PageID.42-43).

In a "deferral jurisdiction," such as Michigan, a plaintiff preserves his Title VII claim if within 300 days of the allegedly discriminatory or retaliatory acts he institutes proceedings with the EEOC, which under a work-sharing agreement, refers the charge to the applicable state agency. *Logan v. MGM Grand Detroit Casino*, 939 F.3d 824, 827-828 (6th Cir. 2019). To the extent that a plaintiff bases his Title VII claim on any discrete act of discrimination or retaliation that occurred beyond that 300-day period, the claim is untimely and not actionable.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114-115; 122 S.Ct. 2061 (2002).

In the case at bar, Plaintiff filed his Charge of Discrimination with the EEOC on July 30, 2024.  Consequently, any discrete act of discrimination or retaliation that occurred before October 4, 2023, is not actionable.  A review of the factual allegations in the First Amended Complaint reveals that all of the alleged acts of discrimination and retaliation occurred before that date.  Therefore, the Court should GRANT CMU's Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c), dismiss the Title VII claim with prejudice, and dismiss CMU as a party.

## <u>MOST APPROPRIATE AUTHORITY</u>

- *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114-115; 122 S.Ct. 2061 (2002).

- *Amini v. Oberlin Coll.*, 259 F.3d 493, 498 (6th Cir. 2001).

## STATEMENT OF FACTS

When reviewing a motion brought under Fed. R. Civ. P. 12(c), the Court may consider items appearing in the record and exhibits attached to the motion so long as the exhibits are referred to in the complaint and are central to the plaintiff's claims. *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). The Statement of Facts presented below relies on the factual allegations from the First Amended Complaint, CMU's responses to those allegations, and various exhibits referenced in the First Amended Complaint and relied upon by Plaintiff, which previously have been placed into the record with Defendants' Answer (ECF No. 10).

A. **Background Information**Error! Bookmark not defined.

According to the allegations in the First Amended Complaint, Plaintiff Ricky "Bird" Clarkson began teaching classes at CMU as a part-time fixed-term faculty member (a/k/a adjunct professor) in 2009 (ECF No. 9, PageID.32, ¶ 9). Over the years, Plaintiff taught a Hip-Hop dance class that was offered through the Department of Theatre and Dance (PaegID.33,¶15). As Plaintiff acknowledges, however, he did not teach a Hip-Hop dance class *every* semester since 2009. (PageID.40, ¶ 50). Rather, the Hip-Hop dance class that Plaintiff generally taught was sometimes cancelled due to low enrollment, so Plaintiff was not hired to teach those semesters. *Id*.

1

While Plaintiff has neglected to provide the Court with the appointment letters that he received from CMU for his various teaching assignments over the years, CMU has included with its Answer every appointment letter that Plaintiff received since July 30, 2018, along with the "CMU Personnel Transaction" sheets associated with each appointment letter, which show the specific course that Plaintiff was hired to teach each semester (ECF No. 10, PageID.51, ¶ 9; see also ECF No. 10-2, PageID.76-99).[1]   As these documents demonstrate, over the five academic years between the 2018 Fall Semester and the 2023 Spring Semester, Plaintiff was hired to teach during seven of the ten semesters.  *Id*.

For most of those seven semesters, Plaintiff taught a single two-credit class called "DAN 126 (Hip-Hop I)" pursuant to a single-semester appointment – as opposed to a full-year appointment.   (PageID.76-99).   Plaintiff taught DAN 126 in each of the following semesters pursuant to a single-semester appointment:

- 2018 Fall Semester (August – December, 2018)
- 2020 Spring Semester (January – May, 2020)
- 2020 Fall Semester (August – December, 2020)
- 2021 Spring Semester (January – May, 2021)
- 2022 Spring Semester (January – May, 2022).

---

[1] In the First Amended Complaint, Plaintiff makes a number of references to working for CMU as a fixed-term faculty member at various times since 2009 (ECF No. 9, PageID.32-34, ¶¶ 9, 15, 17, 18) while acknowledging that he was not employed every semester over that period of time (PageID.40, ¶ 50).  He also contends that he suffered retaliation when he was not reappointed because the class that he was going to teach in the 2023 Fall Semester was cancelled (*Id*., ¶ 49).  Accordingly, which semesters Plaintiff was appointed to teach a course, as reflected by the appointment letters, are central to Plaintiff's Title VII claim.  *Bassett*, 528 F.3d at 430.

*Id*. Plaintiff was **not** hired as a fixed-term faculty member for the 2019 Spring Semester, the 2019 Fall Semester, or the 2021 Fall Semester (ECF No. 10, PageID.51, ¶ 9).

In each instance that Plaintiff was hired for a semester, the appointment letter was signed by CMU's then-acting Executive Vice President/Provost and counter-signed by Plaintiff under an acknowledgement stating: "I ACCEPT THE APPOINTMENT AT CENTRAL MICHIGAN UNIVERSITY AS OUTLINED ABOVE." (PageID.76, 81, 85, 88, 91 and 96). Each appointment letter also reminded Plaintiff that the specific terms of the appointment was "contingent" upon "University need, including sufficient enrollment in the Department, as determined by the Dean and the department." (PageID.76, 80, 85, 88, 91, 95). As a salary, Plaintiff was paid $1,944 for each semester (except for the 2022 Spring Semester, when the salary was raised to $1,974). *Id*.

Then in September, 2022, Plaintiff received an appointment letter for the entire 2022-2023 academic year (rather than an appointment for just a single semester) (PageID.95-96). That appointment letter informed Plaintiff that he would be assigned to teach DAN 126 (Hip-Hop I) for the 2022 Fall Semester, which ran from August through December, 2022, and a newly-created two-credit course, DAN 226 (Hip-Hop II), for the 2023 Spring Semester, which ran from January through May, 2023 (*Id*.; see also ECF No. 10, PageID.62, ¶ 48).

3

Thereafter, in April 2023, with the 2023 Spring Semester drawing to a close, Plaintiff was advised that he would soon receive information regarding which classes he would be scheduled to teach during the 2023 Fall Semester (ECF No. 9, PageID.40, ¶ 47). More specifically, at Paragraph 47 of the First Amended Complaint, Plaintiff alleges as that on April 14, 2023, Professor Stanley-Bohn, the Chairperson of the Department of Theatre and Dance, sent him a "reappointment letter" for the fall 2023 semester, indicating that details for which classes he would be teaching would be "forthcoming." *Id*.

Plaintiff has not attached to the First Amended Complaint the "reappointment letter" that he supposedly received from Professor Stanley-Bohn on April 14, 2023. Moreover, the only appointment letters issued to Plaintiff by CMU after July 30, 2018 are discussed above, and those do not include the one described in Paragraph 47 of the Complaint.

However, Professor Stanely-Bohn did send an *email* to Plaintiff on April 14, 2023  (ECF No. 10-4, PageID.104).  The email from Professor Stanely-Bohn was not in the form of the other reappointment letters that Plaintiff received from CMU – all of which were signed by the then-acting Provost and counter-singed by Plaintiff. Instead, Professor Stanely-Bohn's communication was merely an email that provided as follows:

> Please allow this correspondence to serve as notice described in Article 9, paragraph 3 of the CMU/UTF collective bargaining agreement that

the Theatre and Dance department intents to reappoint you for the fall
semester.  Your external review of teaching is in process, and I will let
you know once I've secured a qualified reviewer for you.

Additional details as to which classes you'll be teaching are dependent
upon enrollment and will be forthcoming.  If you have any questions,
please let me know. *Id*.[2]

According to Plaintiff, a few weeks after receiving this email, Professor
Stanley-Bohn sent him another email informing him that the class was in danger of
being cancelled due to low enrollment (ECF No. 9, PageID.40, ¶ 48).  In relevant
part, the May 2, 2023 email stated as follows:

This email is to inform you that since the enrollment is extremely low
in DAN 126 (1 of 30 booked), it is in danger of being cancelled for the
Fall semester.  While there is still time to raise enrollment, the window
for that is closing and there is a tremendous amount of ground to make
up for this class to run.  (ECF No. 10-5, PageID.106).

Then, on July 21, 2023, Plaintiff was advised by Dennis Armistead, the
Executive Director of Faculty Personnel Services ("FPS"), that DAN 126 would
indeed be cancelled for the 2023 Fall Semester (ECF No. 9, PageID.40, ¶ 49; see
also ECF No. 10-6, PageID.108).  As such, Plaintiff was not appointed as a fixed-
term faculty member for the 2023-2024 academic year, and he has not taught any
course at CMU since the 2023 Spring Semester ended.

---

[2] Although Plaintiff has not attached a copy of the April 14, 2023 email to the First
Amended Complaint, he does specifically reference the email, and the document is
central to his Title VII retaliation claim.  As such, the Court may review and consider
the email as it resolves the present motion.  See *Bassett*, 528 F.3d at 430.

**B.      Plaintiff's claims of discrimination and retaliation.**

Plaintiff alleges that he experienced racial discrimination while he was employed by CMU.  According to the Complaint, these allegation relate to conduct that allegedly occurred *before* Plaintiff's employment at CMU ended with the conclusion of the 2023 Spring Semester.

For example, Plaintiff contends that in 2019, Professor Trommer-Beardslee, whom the First Amended Complaint identifies as a full-time fixed-term faculty member and the "Director of the Dance Department" (ECF No. 9, PageID.33-34, ¶¶ 11 and 17), refused to allow Plaintiff to choregraph the faculty dance concert (PageID.35, ¶¶ 22-23).  Plaintiff also alleges that Professor Trommer-Beardslee prevented him from choreographing the concert in 2023 (PageID.35, ¶ 24) and that in 2021 or 2022, she began "disparaging" Plaintiff to students (PageID.34, ¶ 19).

In addition to these claims of discrimination, Plaintiff also contends that he experienced retaliation while at CMU. Plaintiff alleges that in March, 2023, he submitted a formal complaint to CMU's Office of Civil Rights and Institutional Equity ("OCRIE") alleging that he had suffered racial discrimination (PageID.39, ¶ 41). Plaintiff claims that after he submitted the formal complaint to OCRIE, he experienced retaliation when Professor Stanley-Bohn initiated a peer review and outside review of him (*Id.*, ¶¶ 43-44).

6

Plaintiff also contends that he experienced retaliation when "the police were called" while he was holding a dance practice with students at the CMU Atrium (PageID.40, ¶ 46). Notably, the allegation is written in the passive voice stating only that "[s]omehow, the police were called." *Id*. Presumably, Plaintiff has written the allegation in this unassertive way because he knows that none of the Defendants in this lawsuit were responsible for calling the police.

Rather, on March 14, 2023 – eight days *before* Plaintiff even submitted his formal complaint to OCRIE – Plaintiff was holding a dance practice at the CMU Atrium after 10:30 p.m., when the building was closed. (ECF No. 10-8, PageID.125). The custodian called the police because she was trying to finish waxing the floors and could not do so with the ongoing dance practice, but Plaintiff and his seven students refused to leave (ECF No. 10, PageID.61, ¶ 45).

Finally, Plaintiff claims that he was retaliated against when Mr. Armistead informed him on July 21, 2023, that DAN 126 would be cancelled for the 2023 Fall Semester due to low enrollment (ECF No. 9, PageID.40, ¶¶ 48-49). Plaintiff alleges that "[u]pon information and belief" the low enrollment for DAN 126 was somehow caused by Defendants' unspecified "efforts" to prevent students from taking the class. *Id*. Plaintiff makes this allegation even though he readily acknowledges that in prior semesters, before he submitted his complaint to OCRIE, DAN 126 was occasionally cancelled due to low enrollment (PageID.10, ¶ 50).

### C.    Plaintiff's Title VII claim against CMU

On July 30, 2024, more than a year after Plaintiff's last day of employment at

CMU, he filed a Charge of Discrimination with the EEOC (ECF No. 9, PageID.42,

¶ 57; see also ECF No. 10-7, PageID.110-111).[3]  Then, after waiting another year,

Plaintiff filed this lawsuit on July 18, 2025.

In bringing this action, Plaintiff has named CMU as a Defendant, along with

Professors Stanley-Bohn and Trommer-Beardslee.  Plaintiff has also made Jefferson

Campbell, the Dean of the College of Arts and Media a Defendant (ECF No. 9,

PageID.32, ¶ 5).  Plaintiff asserts a Title VII claim against CMU (Count I)

(PageID.42-43).  He also alleges that Defendants Stanley-Bohn and Campbell

violated Michigan's Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101, *et. seq*., and

that all three individual Defendants violated 42 U.S.C. § 1983.

### <u>STANDARD OF REVIEW</u>

A party may move for judgment on the pleadings after the pleadings are

closed, but early enough not to delay trial.  Fed. R. Civ. P. 12(c).  A motion brought

---

[3] Although Plaintiff has not attached a copy of the Charge of Discrimination to the First Amended Complaint, the charge is referenced in the pleading and central to Plaintiff's Title VII claim because he must show that he exhausted his EEOC administrative remedies. *Flanigan v. Westrock Services*, LLC, 704 F. Supp.3d 807, 813 (N. D. Ohio, 2023).   In addition, the Court may take judicial notice of  EEOC Charges and "related documents" as public records. *Kovac v. Superior Dairy, Inc*., 930 F.Supp.2d 857, 862 (N. D. Ohio, 2013). Consequently, the Court may also consider CMU's September 27, 2024 Position Statement, a copy of which is attached to the Answer.  (ECF No. 10-8, PageID.114-126).

under Fed. R. Civ. P. 12(c) is reviewed using the same standards as a motion brought under Fed. R. Civ. P. 12(b)(6). *JPMorgan Chase Bank v. Winget*, 510 F.3d 577, 581 (6th Cir., 2007).  A claim survives a motion to dismiss pursuant to Rule 12(b)(6) if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678; 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotation omitted).

Moreover, the Court "need not accept as true legal conclusions or unwarranted factual inferences." *JPMorgan Chase Bank*, 510 F.3d at 582.  A Rule 12(c) motion is properly granted when no material issue of fact and the moving party is entitled to judgment as a matter of law. *Id*.

## LEGAL ARGUMENT

### A.    A review of the First Amended Complaint reveals that Plaintiff's Title VII claim is untimely and not actionable.

One only needs to read the First Amended Complaint to quickly realize that Plaintiff's Title VII claim is untimely and not actionable. A plaintiff must file a timely discrimination charge with the EEOC prior to bringing a Title VII lawsuit. *Amini v. Oberlin Coll.*, 259 F.3d 493, 498 (6th Cir. 2001). The time for filing a charge with the EEOC is typically 180 days, but the filing period may be extended to 300 days in certain jurisdictions, like Michigan, that have a State or local agency with authority to grant relief from such practice.  42 U.S.C. § 2000e-5(d); see also *Logan v. MGM Grand Detroit Casino*, 939 F.3d 824, 827-828 (6th Cir. 2019).

9

Within such jurisdictions, known as "deferral jurisdictions," a plaintiff preserves his Title VII claim if within 300 days of the allegedly discriminatory or retaliatory acts he either (a) institutes proceedings with the applicable state agency and also then files the charge with the EEOC, or (b) files only with the EEOC, which under a work-sharing agreement, refers the charge to the applicable state agency. *Logan,* 939 F.3d at 828. However, to the extent that the plaintiff bases his Title VII claim on any discrete act of discrimination or retaliation that occurred beyond that 300-day period, the claim is untimely and not actionable. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114-115; 122 S.Ct. 2061 (2002).

In the case at bar, Plaintiff filed his Charge of Discrimination with the EEOC on July 30, 2024. (PageID.110-111). Accordingly, any discrete act of discrimination or retaliation that allegedly occurred more than 300 days before that date (*i.e.*, on or before October 4, 2023) is time barred.

This point is critical because according to the Complaint, CMU notified Plaintiff on July 21, 2023, that the class that he had been assigned to teach for the 2023 Fall Semester (*i.e.*, DAN 126) had been cancelled due to low enrollment. (ECF No. 9, PageID.40, ¶ 49). More specifically, on July 21, 2023, Dennis Armistead sent an email to Plaintiff that stated as follows:

> Good afternoon, Ricky –
>
> I wanted to take a moment and update you about the class you generally teach (DAN 126) at CMU for the fall semester, 2023. You were

10

appointed most recently for the Fall and Spring semesters of the 2022-2023 school year.  As I understand it, DAN 126 is going to be cancelled for low enrollment (two students enrolled presently) for the fall, 2023 semester.

(ECF No. 10-6, PageID.108).

Mr. Armistead's email also informed Plaintiff that because DAN 126 was being cancelled, CMU was **not** going to reappoint Plaintiff as a fixed-term faculty member for the 2023 Fall Semester:

With the cancellation of DAN 126, you are not going to be reappointed for the fall semester; simply for enrollment and need issues.  This is no reflection on you or your efforts while serving as a faculty member at CMU.  *Id*.

Although the First Amended Complaint alleges that Mr. Armistead's July 21, 2023 email informed Plaintiff that the Dance Department "would" reach out to him if anything changed (PageID.40, ¶ 49), the allegation is proved untrue merely by reading the email.  The email actually stated that "[i]f the situation with enrollment and need for faculty to teach DAN 126 changes for fall, 2023, or spring 2024 – the department **may** reach out to you directly." (PageID.108) (emphasis added).  Mr. Armistead then closed the email with the following statement:

I wish you the very best of luck in all that you do.  Please do not hesitate to contact FPS if you have any questions.  *Id*.

Simply put, it is undisputed that on July 21, 2023, CMU clearly communicated to Plaintiff that DAN 126 was cancelled and that Plaintiff would not be reappointed. Nevertheless, Plaintiff did not file his Charge of Discrimination with the EEOC until

July 30, 2024 – more than one year later.  Because Plaintiff failed to file his Charge of Discrimination within 300 days after he was notified that he would not be teaching during the 2023-2024 academic year, he cannot maintain his Title VII claim based on that allegation.  *Morgan*, 536 U.S. at 114-115.

Notably, the 300-day limitations period under 42 U.S.C. § 2000e-5(e)(1) begins to run from the date that the allegedly discriminatory employment practice is communicated to the plaintiff.  *Amini*, 259 F.3d at 499 (6th Cir., 2001).  In *Amini,* the plaintiff applied for a faculty position at the defendant-college. More than 300 days after receiving notification that he had not been hired for the position, Plaintiff filed a charge of discrimination with the EEOC.  *Id*. at 496.  On these facts, the Sixth Circuit affirmed the district court's order granting the defendant's motion to dismiss as follows:

> Given [§ 2000e-5(e)(1)'s] focus on 'the alleged unlawful employment practice,' it would contradict the statutory language to begin running the limitations period from the time at which the facts supporting a charge of discrimination become apparent to a reasonable person, as opposed to the date the discriminatory employment practice is communicated to the plaintiff. Thus, we reaffirm our practice of running the Title VII … limitations period from the date on which the alleged discriminatory act (in this case, the failure to hire Amini) was communicated to the plaintiff.

*Id*. at 499.

Likewise, in the case at bar, to the extent Plaintiff bases his Title VII claim on the fact that he did not teach DAN 126 during the 2023 Fall Semester, the limitations

period for that claim began to run on July 21, 2023, when CMU communicated its employment decision to him. Therefore, the claim is untimely and not actionable.

Moreover, a review of the other allegations in the First Amended Complaint reveals that the following allegations all relate to matters that occurred while Plaintiff was still employed by CMU; accordingly, any Title VII claim that is based on these allegations is also untimely and not actionable:

- That prior to Plaintiff's final semester of teaching, Defendants only ever offered him the option to teach Hip-Hop dance classes (ECF No. 9, PageID.33, ¶ 15).

- That in the spring of 2019 and the spring of 2023, Professor Trommer-Beardslee allegedly refused to allow Plaintiff to choregraph a dance for the faculty dance concert (ECF No. 9, PageID.34-35, ¶¶ 21-24).

- That in December 2022, Defendants allegedly did not attend or promote a special project that Plaintiff and another faculty member (Terri Hansen) had developed (ECF No. 9, PageID.37, ¶¶ 34-35).

Even more troubling than these untimely allegations is Plaintiff's disingenuous suggestion that CMU somehow violated Title VII when the custodian called the police at approximately 10:41 p.m., on March 14, 2023, because Plaintiff and seven of his students refused to leave the Atrium, which was closed to the public at the time (ECF No. 9, Page.40, ¶ 46).  Obviously, Plaintiff cannot possibly have the good-faith belief that the custodian (who clearly had no personal knowledge or involvement  regarding Plaintiff's day-to-day at CMU) called the police more than one week *before* Plaintiff even filed his OCRIE report *because* Plaintiff had opposed

13

an unlawful employment practice. (PageID.125). Plaintiff's attempt to present the incident to the Court as "retaliation" in violation of Title VII goes beyond the pale. The allegation is not only untimely, it is also completely meritless.

In short, because Plaintiff waited until July 30, 2024, to file his Charge of Discrimination, only those alleged acts of discrimination or retaliation that occurred within 300 days of that date are actionable.  Accordingly, any claim based on alleged conduct that occurred before October 4, 2023 is time barred. *Morgan*, 536 U.S. at 114-115; *Amini,* 259 F.3d at 499.

## B.   The remaining allegations in the First Amended Complaint fail to assert a timely Title VII claim.

As explained above, the vast bulk of Plaintiff's allegations relate to matters that, based on the face of the First Amended Complaint alone, clearly occurred before October 4, 2023, and therefore, more than 300 days before Plaintiff filed his Charge of Discrimination.  Consequently, to the extent Plaintiff bases his Title VII claim on those allegations, the claim is not actionable and should be dismissed. *Amini,* 259 F.3d at 499.

In addition, there are some allegations in the First Amended Complaint that assert discrete discriminatory or retaliatory acts but are purposefully vague regarding when those acts supposedly occurred. However, it is well settled that a discrete discriminatory or retaliatory act (as opposed to a hostile environment) occurs "on the day it happened." *Morgan*, 536 U.S. at 110.  Thus, any Title VII claim based on

14

a discrete act is not actionable unless the act occurred within the 180 day- or 300 day-time period before the Charge of Discrimination was filed.  *Id*. at 114-115.

In the case at bar, the allegations of discrete acts of discrimination/retaliation that are vague regarding when the acts occurred include the following:

- That the low enrollment for the DAN 126 course that Plaintiff was assigned to teach for the 2023 Fall Semester was due to "Defendants' efforts to prevent students from taking [Plaintiff's] class."  (ECF No. 9, PageID.40, ¶ 48).

- That after Plaintiff was notified on July 21, 2023, that the DAN 126 was being cancelled for the 2023 Fall Semester, "Defendants continued to discourage student enrollment" in the class.  (PageID.40, ¶ 52).

These allegations, of course, have no evidentiary support.  Accordingly, Plaintiff is unable to explain how these actions occurred at all, much less that they occurred within 300 days of the filing of his Charge of Discrimination, such that any Title VII claim based on the allegations is actionable.

Nevertheless, there is other information in the pleadings that allows the Court to conclude, for purposes of resolving CMU's motion under Fed. R. Civ. P. 12(c), that any claim based on these allegations is time barred.  Specifically, it is undisputed that the 2023 Fall Semester at CMU began in late August, 2023. Accordingly, assuming, purely for the sake of argument, that Defendants prevented or discouraged students from taking DAN 126 during the 2023 Fall Semester (as the First Amended Complaint alleges), those actions must have occurred *before* the 2023 Fall Semester

15

began – and, therefore, before October 4, 2023.  As such, Plaintiff cannot base his Title VII claim on those allegations. *Morgan*, 536 U.S. at 114-115.

Furthermore, the allegation that Defendants prevented, or otherwise discouraged, students from taking DAN 126, or any other course, is **not** within the scope of the Charge of Discrimination.  With his Charge of Discrimination, Plaintiff explained his claim as follows:

> [A]fter I filed th[e] complaint [with OCRIE], my class was cancelled in the fall of 2023, allegedly due to low enrollment, and I was not hired for the full-time position.   (PageID.110).

The Charge of Discrimination never stated or suggested that Defendants prevented or discouraged students from taking his class. Rather, the Charge of Discrimination merely stated that Plaintiff's class was "cancelled in the fall of 2023[.]"  (PageID.110).

As a prerequisite to bringing a Title VII claim, the plaintiff must exhaust his administrative remedies by filing a Charge of Discrimination with the EEOC.  *Scott v. Eastman Chemical Co*., 275 Fed. Appx. 466, 470-471 (6th Cir. 2008) (citing *Weigel v. Baptist Hosp. of E. Tenn*., 302 F.3d 367, 379 (6th Cir. 2002).  "The general rule is that a plaintiff may file suit only in regard to the claims asserted in the EEOC charge and those within the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination."  *Scott*, 275 Fed. Appx. at 471.

Here, Plaintiff's Charge of Discrimination alleged only that his course was "cancelled," as opposed to contending that the Defendants prevented or discouraged students from taking his class. Consequently, to the extent Plaintiff claims that Defendants prevented or discouraged students from taking his class, those claims were not sufficiently described in his Charge and were not within the expected scope of the EEOC investigation. Therefore, not only should the claim be dismissed because it is untimely, it should also be dismissed for the separate and independent reason that Plaintiff failed to exhaust his administrative remedies. See *Scott*, 275 Fed. Appx. at 471.

All that remains then is the allegation that Defendants "removed [Plaintiff's] class" as an offering for the 2024 Spring Semester without telling him, ensuring that he would never teach at CMU again (ECF No. 1, PageID.11, ¶ 53). While it is not entirely clear, it appears that Plaintiff is alleging that at some unknown point in time after DAN 126 was cancelled, the course that Plaintiff had originally been slated to teach for the 2024 Spring Semester (*i.e*., DAN 226) was also cancelled and/or "removed" as an offering for that semester.

However, as explained above, Mr. Armistead expressly communicated to Plaintiff on July 21, 2023, that Plaintiff would not be reappointed as a fixed-term faculty member (PageID.108). Given this communication, Plaintiff must have

known that he would not be teaching *any* course during the 2023-2024 academic year.

This is especially true given that the exhibits relied on by Plaintiff to support his allegations clearly demonstrate that even by May 2, 2023, Plaintiff was aware that DAN 126 (Hip Hop I) was in danger of being cancelled due to low enrollment. (ECF No. 9, PageID.40, ¶ 48 and ECF No. 10-5, PageID.106).  Plaintiff must have known that if DAN 126, the *beginner* Hip-Hop dance class, was cancelled for the 2023 Fall Semester due to low enrollment, there would be insufficient student interest/eligibility to run the *advanced* Hip-Hop dance class, DAN 226, the following semester.  Therefore, when Plaintiff received confirmation on July 21, 2023, that DAN 126 was cancelled, he would have necessarily known that DAN 226 was going to be cancelled too.

## **CONCLUSION**

For the foregoing reasons, Defendant Central Michigan University Board of Trustees ("CMU") respectfully requests that this Honorable Court GRANT its Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c) and that the Court enter an Order that dismisses the Title VII claim with prejudice and dismisses CMU as a party.

Dated: September 15, 2025

*Respectfully submitted*,
By:  /s/ Ryan Kauffman
    Ryan K. Kauffman (P65357)
    Attorneys for Defendants

## CERTIFICATION OF COMPLIANCE

In accordance with E.D. Mich L.R. 5.1(a), the Undersigned certifies that the document above complies with the Rule's requirements, including double-spacing (except for quotations and footnotes), one-inch margins, and 14 point font.

*Respectfully submitted*,

Dated: September 15, 2025        By:  */s/ Ryan Kauffman*
                                           Ryan K. Kauffman (P65357)
                                           Fraser Trebilcock Davis Dunlap & Cavanaugh, P.C.
                                           Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2025, I electronically filed the foregoing document with the United States District Court for the Eastern District of Michigan Northern Division, via Pacer, which said Pacer also serves a copy on all counsel of record.

/s/ C A Sczepanski
C A Sczepanski