**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

RICKY "BIRD" CLARKSON,

Plaintiff,

v.

Case No. 1:25-cv-12209
District Judge Michael C. Martin

CENTRAL MICHIGAN UNIVERSITY
BOARD OF TRUSTEES, et al.,

Defendants.
_________________________________/

**OPINION AND ORDER DENYING HEATHER TROMMER-BEARDSLEE'S MOTION FOR JUDGMENT ON THE PLEADINGS (ECF No. 13)**

Plaintiff Ricky "Bird" Clarkson brought a claim under 42 U.S.C. § 1983 against Defendant Heather Trommer-Beardslee alleging that she retaliated against Clarkson in violation of Clarkson's First Amendment rights after he made reports of racial discrimination. Before the Court is Trommer-Beardslee's motion for judgment on the pleadings. (ECF No. 13.) For the reasons below, the Court will deny the motion.

## I. BACKGROUND

CMU employed Ricky "Bird" Clarkson as a faculty member of the Dance Department beginning in 2009. (ECF No. 9, PageID.32.) Clarkson alleges that, during his time at CMU, he was denied opportunities, singled out, disparaged, and

discriminated against because of his race. (*Id.* at PageID.33.) Specifically, Clarkson alleges he was only ever offered the option to teach Hip-Hop dance classes, despite being "trained and proficient in many other forms of dance as well." (*Id.*) Clarkson also claims Trommer-Beardslee, Director of the Dance Program, told students that Clarkson was "just a guy" who "teaches sometimes," "denied him the opportunity to choreograph for the Spring Faculty Dance Concert" despite allowing similarly positioned white professors to do so, and "prohibited [Clarkson] from attending the student auditions." (*Id.* at PageID.34–35.) According to Clarkson, Trommer-Beardslee also questioned Clarkson's students about whether they felt "safe" with Clarkson and prohibited Clarkson from contacting students for opportunities to dance for a travelling dance group that Clarkson managed. (*Id.* at PageID.36–37.)

Clarkson further alleges that he "reported issues he was having with Trommer-Beardslee" during a meeting with Trommer-Beardslee and Keeley Stanley-Bohn, Chair of Department of Theatre and Dance, on January 11, 2023. (*Id.* at PageID.38.) The day after this meeting, Trommer-Beardslee asked Clarkson to research curriculums to start a new minor in Hip-Hop or West African Dance, suggesting that Clarkson was going to be hired as a full-time professor. (*Id.*) On January 23, 2023, Clarkson met with CMU's Office of Civil Rights and Institutional Equity ("OCRIE") to discuss filing a complaint against the Dance Department for race discrimination. (*Id.* at PageID.39.) Clarkson claims Stanley-

Bohn retaliated against Clarkson by "initiat[ing] a peer review and outside review of" Clarkson. (*Id.*) Clarkson also asserts that "the police were called on [Clarkson] for holding a dance practice with students in the public entrance of the CMU Atrium." (*Id.* at PageID.40.)

On April 14, 2023, Stanley-Bohn sent Clarkson a letter of re-appointment for the fall 2023 semester. (*Id.*) A few weeks later, Stanley-Bohn emailed Clarkson to tell him that the class to which he was assigned was "in danger of being cancelled for the Fall Semester" due to "low enrollment." (*Id.*)

On July 21, 2023, Dennis Armistead emailed Clarkson to inform him that "DAN 126 is going to be cancelled for low enrollment (two students enrolled presently) for the fall, 2023 semester." (ECF No. 10-6, PageID.108.) Armistead further stated "[w]ith the cancellation of DAN 126, you are not going to be reappointed for the fall semester; simply for enrollment and need issues." (*Id.*) Armistead told Clarkson that "[i]f the situation with enrollment and need for faculty to teach DAN 126 changes for fall, 2023 or spring, 2024 – the department may reach out to you directly." (*Id.*) Clarkson claims that CMU took efforts to "prevent students from taking [Clarkson's] class" and "continued to discourage student enrollment" in his class. (ECF No. 9, PageID.40.) Clarkson claims that "Defendants removed [his] class as an offering entirely for the Spring of 2024 without telling him." (*Id.* at PageID.41.)

According to Clarkson, in April 2024, OCRIE issued a report finding that Trommer-Beardslee "denied Clarkson the opportunity to choreograph while approving opportunities to choreograph for white faculty based on his race" and "asked white students who worked with Clarkson about their experience and safety when dancing or traveling with Clarkson, when she did not ask a Black student who worked with Clarkson the same questions." (*Id.*)

Clarkson filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) on July 30, 2024. (ECF No. 10-7, PageID.111.) Clarkson brought this lawsuit on July 18, 2025. (ECF No. 1.) Clarkson's amended complaint alleges one (and only one) cause of action against Trommer-Beardslee, namely a claim under 42 U.S.C. § 1983 alleging that Trommer-Beardslee violated his First Amendment rights. (ECF No. 9, PgID.44.) Trommer-Beardslee filed the present motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) (ECF No. 13).

## II. STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) generally follows the same rules as a motion to dismiss the complaint under Rule 12(b)(6)." *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 480 (6th Cir. 2020). "For

purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *JPMorgan Chase Bank, N.A. v. Winget,* 510 F.3d 577, 581 (6th Cir. 2007)). "Courts must accept as true all well-pleaded factual allegations, but they need not accept legal conclusions. And the well-pleaded factual allegations must 'plausibly give rise to an entitlement to relief.'" *Bates*, 958 F.3d at 480 (citations omitted).

"[D]ocuments attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss." *Com. Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007). In ruling on a 12(c) motion, the Court can also consider: (1) any documents attached to, incorporated by, or referred to in the pleadings; (2) documents attached to the motion for judgment on the pleadings that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice. *Dudek v. Thomas & Thomas Att'ys & Couns. at L., LLC*, 702 F. Supp. 2d 826, 832 (N.D. Ohio 2010). However, "a court evaluating a motion for judgment on the pleadings (or a motion to dismiss) must focus only on the allegations in the pleadings." *Bates*, 958 F.3d at 483.

## III. ANALYSIS

Trommer-Beardslee argues that she is entitled to judgment on the pleadings because Clarkson's amended complaint fails to sufficiently allege that Trommer-Beardslee retaliated against Clarkson for making his complaints. "To establish liability under 42 U.S.C. § 1983, a plaintiff must demonstrate: (1) that he was deprived of a right secured by the Constitution or laws of the United States, and (2) that he was subjected or caused to be subjected to this deprivation by a person acting under color of state law." *Gregory v. Shelby Cnty., Tenn.*, 220 F.3d 433, 441 (6th Cir. 2000). Clarkson alleges he was deprived of his First Amendment right. (ECF No. 9, PageID.44.) In order for an employee to establish a claim of First Amendment retaliation, the "employee must demonstrate that: (1) he engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two." *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006) (citing *Thaddeus–X v. Blatter,* 175 F.3d 378, 394 (6th Cir.1999)).

Here, Clarkson alleges that he "made multiple statements complaining about the race-based discrimination and harassment he and others experienced at CMU," and that "Defendants violated Plaintiff's First Amendment Rights when they further discriminated against, harassed, and retaliated against Plaintiff because of

his speech and complaints." (ECF No. 9, PageID.44.) The Court addresses each of the three elements required to state a claim for First Amendment retaliation below.

**A. Constitutionally Protected Speech.**

Clarkson must sufficiently allege that he engaged in constitutionally protected speech or conduct to state a claim. Clarkson alleges he made four specific complaints of racial discrimination. On January 11, 2023, Clarkson "reported the issues he was having with Trommer-Beardslee and that he felt he was being discriminated against based on his race." (ECF No. 9, PageID.38.) In January 2023, Clarkson met with CMU President Robert Davies and "reported the race discrimination and harassment." (*Id.* at PageID.38–39.) On January 25, 2023, Clarkson met with OCRIE to "discuss filing a complaint." (*Id.* at PageID.39.) Finally, Clarkson filed a Charge of Discrimination with the EEOC. (*Id.* at PageID.42.) Each of these complaints of racial discrimination is protected by the First Amendment. *See Nailon v. Univ. of Cincinnati*, 715 F. App'x 509, 514 (6th Cir. 2017) (holding that allegation of racial discrimination by university officials was "constitutionally protected speech"); *Perry v. McGinnis*, 209 F.3d 597, 609 (6th Cir. 2000) (public employee's complaint of racially disparate treatment, which consisted of an internal grievance, was a matter of public concern for First Amendment purposes). Trommer-Beardslee does not dispute that Clarkson's

complaints were speech protected by the First Amendment. Thus, the first element of a First Amendment retaliation claim is sufficiently pleaded.

**B. Adverse Action**

Clarkson must allege that an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in the protected conduct. *Scarbrough*, 470 F.3d at 255. Trommer-Beardslee's chief argument is that Clarkson fails on this element because he does not "assert any factual allegation whatsoever to demonstrate that Professor Trommer-Beardslee actually did anything at all to violate his constitutional rights." (ECF No. 13, PageID.165.) As a threshold matter, any alleged act of retaliation must have occurred after Clarkson engaged in the protected conduct (i.e., made the complaints of racial discrimination). *See Scarborough*, 470 F.3d at 255 (employee must prove that "adverse action was motivated at least in part by his protected conduct."). Clarkson alleges he made his first report on January 11, 2023. (ECF No. 9; PageID.38.) The Court therefore considers the alleged acts of retaliation after January 11, 2023, and Trommer-Beardslee's arguments as to each of them.

First, Clarkson states that "on January 12, 2023, Defendant Trommer-Beardslee asked Professor Bird to research curriculums to start a new minor in Hop-Hop or West African Dance." (ECF No. 9, PageID.38.) Clarkson argues that "this offer [was] discriminatory as it again relies on a racist stereotype." (*Id.*) The

Court agrees with Trommer-Beardslee that this allegation fails to establish a retaliatory action taken by Trommer-Beardslee. When the alleged adverse action is "inconsequential," resulting in "nothing more than a 'de minimis injury,'" the action would not deter a person of ordinary firmness from continuing to engage in the protected conduct, so the retaliation claim is properly dismissed. *Wurzelbacher v. Jones-Kelly*, 675 F.3d 580, 584 (6th Cir. 2012) (citation omitted). As with the plaintiff in *Wurzelbacher*, Clarkson "did not suffer a threat to his economic livelihood" when Trommer-Beardslee made this offer, nor was Clarkson "defamed," nor did he "experience the public disclosure of intimate or embarrassing information." *Id.* It is not clear how an alleged job offer and attempt to work with an employee would deter someone from making complaints of racial discrimination in the future. For that reason, the Court holds that Clarkson's allegation that he was asked to research curriculums for a new minor is insufficient to state a claim.

Second, Clarkson alleges that "[u]pon information and belief, Defendants continued to discourage student enrollment in Professor Bird's class." (ECF No. 9, PageID.40.) Trommer-Beardslee takes issue with the fact that she is not specifically identified in this allegation. *Childress v. City of Cincinnati, Ohio*, 765 F. Supp. 3d 662, 689 (S.D. Ohio 2025) ("[F]or a plaintiff who alleges unconstitutional conduct by multiple defendants to pass the *Iqbal/Twombly* hurdle,

the plaintiff must identify 'with particularity' what each defendant allegedly did in connection with that unconstitutional conduct."). It is true that Clarkson's complaint does not identify which defendants discouraged students from enrolling in his class; and this lack of specificity does create ambiguity in the complaint. However, "[i]f a complaint itself is ambiguous in its factual allegations, and if that ambiguity results in a determination that under one set of facts the plaintiff's constitutional rights were violated and in another they were not, then presumably the district court can so hold, and the matter may then either be appealed or proceed to the discovery stage." *Jackson v. Schultz*, 429 F.3d 586, 589–90 (6th Cir. 2005).

Further, "allegations asserted upon information and belief are not per se insufficient to withstand a Rule 12(b)(6) motion and the Court must consider the pleading's factual allegations as a whole." *Gold Crest, LLC v. Project Light, LLC*, 525 F. Supp. 3d 826, 838 n.10 (N.D. Ohio 2021) (collecting cases). Taken as a whole, Clarkson's complaint states a plausible claim of retaliation. Although his allegation that Defendants continued to discourage student enrollment in his class lacks specificity, when combined with Clarkson's allegations about actions Trommer-Beardslee took in the past, Clarkson's claim appears plausible. For example, Trommer-Beardslee allegedly sought out Clarkson's students and interrogated them about their interactions with him. (ECF No. 9, PageID.36.)

Trommer-Beardslee also allegedly asked Clarkson's students whether they felt "safe" with him. (*Id.*) Resolving ambiguity in favor of Clarkson, it is plausible that Trommer-Beardslee may have continued this course of conduct between fall 2023 and spring 2024, thereby discouraging students from enrolling in Clarkson's classes in retaliation for Clarkson's complaint of racial discrimination. For this reason, the Court finds Clarkson states a plausible claim for relief.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Trommer-Beardslee's Motion for Judgment on the Pleadings. (ECF No. 13.)

s/Michael C. Martin
Hon. Michael C. Martin
United States District Judge

Dated: November 18, 2026