**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

RICKY "BIRD" CLARKSON,

Plaintiff,

v.

Case No. 1:25-cv-12209
District Judge Michael C. Martin

CENTRAL MICHIGAN UNIVERSITY
BOARD OF TRUSTEES, et al.,

Defendants.
_________________________________/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART CMU's MOTION FOR JUDGMENT ON THE PLEADINGS (ECF No. 12)**

Plaintiff Ricky "Bird" Clarkson brought a claim of employment discrimination under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e, *et seq.*) against Defendant Central Michigan University Board of Trustees ("CMU"). For the reasons below, the Court will deny in part and grant in part CMU's motion for judgment on the pleadings. (ECF No. 12.)

## I. BACKGROUND

CMU employed Ricky "Bird" Clarkson as a faculty member of the Dance Department beginning in 2009. (ECF No. 9, PageID.32.) Clarkson alleges that, during his time at CMU, he was denied opportunities, singled out, disparaged, and discriminated against because of his race. (*Id.* at PageID.33.) Specifically, Clarkson

alleges he was only ever offered the option to teach Hip-Hop dance classes, despite being "trained and proficient in many other forms of dance as well." (*Id.*) Clarkson also claims Trommer-Beardslee, Director of the Dance Program, told students that Clarkson was "just a guy" who "teaches sometimes," "denied him the opportunity to choreograph for the Spring Faculty Dance Concert" despite allowing similarly positioned white professors to do so, and "prohibited [Clarkson] from attending the student auditions." (*Id.* at PageID.34–35.) According to Clarkson, Trommer-Beardslee also questioned Clarkson's students about whether they felt "safe" with Clarkson and prohibited Clarkson from contacting students for opportunities to dance for a travelling dance group that Clarkson managed. (*Id.* at PageID.36–37.)

Clarkson further alleges that he "reported issues he was having with Trommer-Beardslee" during a meeting with Trommer-Beardslee and Keeley Stanley-Bohn, Chair of Department of Theatre and Dance, on January 11, 2023. (*Id.* at PageID.38.) The day after this meeting, Trommer-Beardslee asked Clarkson to research curriculums to start a new minor in Hip-Hop or West African Dance, suggesting that Clarkson was going to be hired as a full-time professor. (*Id.*) On January 23, 2023, Clarkson met with CMU's Office of Civil Rights and Institutional Equity ("OCRIE") to discuss filing a complaint against the Dance Department for race discrimination. (*Id.* at PageID.39.) Clarkson claims Stanley-Bohn retaliated against Clarkson by "initiat[ing] a peer review and outside review

of" Clarkson. (*Id.*) Clarkson also asserts that "the police were called on [Clarkson] for holding a dance practice with students in the public entrance of the CMU Atrium." (*Id.* at PageID.40.)

On April 14, 2023, Stanley-Bohn sent Clarkson a letter of re-appointment for the fall 2023 semester. (*Id.*) A few weeks later, Stanley-Bohn emailed Clarkson to tell him that the class to which he was assigned was "in danger of being cancelled for the Fall Semester" due to "low enrollment." (*Id.*)

On July 21, 2023, Dennis Armistead emailed Clarkson to inform him that "DAN 126 is going to be cancelled for low enrollment (two students enrolled presently) for the fall, 2023 semester." (ECF No. 10-6, PageID.108.) Armistead further stated "[w]ith the cancellation of DAN 126, you are not going to be reappointed for the fall semester; simply for enrollment and need issues." (*Id.*) Armistead told Clarkson that "[i]f the situation with enrollment and need for faculty to teach DAN 126 changes for fall, 2023 or spring, 2024 – the department may reach out to you directly." (*Id.*) Clarkson claims that CMU took efforts to "prevent students from taking [Clarkson's] class" and "continued to discourage student enrollment" in his class. (ECF No. 9, PageID.40.) Clarkson claims that "Defendants removed [his] class as an offering entirely for the Spring of 2024 without telling him." (*Id.* at PageID.41.)

According to Clarkson, in April 2024, OCRIE issued a report finding that Trommer-Beardslee "denied Clarkson the opportunity to choreograph while approving opportunities to choreograph for white faculty based on his race" and "asked white students who worked with Clarkson about their experience and safety when dancing or traveling with Clarkson, when she did not ask a Black student who worked with Clarkson the same questions." (*Id.*)

Clarkson filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) on July 30, 2024. (ECF No. 10-7, PageID.111.) Clarkson brought this lawsuit on July 18, 2025. (ECF No. 1.) Clarkson's amended complaint alleges one (and only one) cause of action against CMU, namely a claim under Title VII of the Civil Rights Act of 1964. (ECF No. 9, PageID.42.) CMU filed the present motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). (ECF No. 12.)

## II. STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) generally follows the same rules as a motion to dismiss the complaint under Rule 12(b)(6)." *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 480 (6th Cir. 2020). "For purposes of a motion for judgment on the pleadings, all well-pleaded material

allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *JPMorgan Chase Bank, N.A. v. Winget,* 510 F.3d 577, 581 (6th Cir. 2007)). "Courts must accept as true all well-pleaded factual allegations, but they need not accept legal conclusions. And the well-pleaded factual allegations must 'plausibly give rise to an entitlement to relief.'" *Bates*, 958 F.3d at 480 (citations omitted).

"[D]ocuments attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss." *Com. Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007). In ruling on a 12(c) motion, the Court can also consider: (1) any documents attached to, incorporated by, or referred to in the pleadings; (2) documents attached to the motion for judgment on the pleadings that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice. *Dudek v. Thomas & Thomas Att'ys & Couns. at L., LLC*, 702 F. Supp. 2d 826, 832 (N.D. Ohio 2010). However, "a court evaluating a motion for judgment on the pleadings (or a motion to dismiss) must focus only on the allegations in the pleadings." *Bates*, 958 F.3d at 483.

## III. ANALYSIS

Before a plaintiff may bring a Title VII lawsuit, the plaintiff must exhaust administrative remedies. *Williams v. Nw. Airlines, Inc.*, 53 F. App'x 350, 351 (6th Cir. 2002) ("The exhaustion of administrative remedies is a condition precedent to a Title VII [action]."). "To exhaust administrative remedies, a plaintiff must file an EEOC charge within 180 days of the alleged unlawful employment practice or, if the plaintiff has instituted proceedings with a state or local agency, within 300 days." *Id.* (citing 42 U.S.C. § 2000e–5(e)).

Here, many of the allegations in Clarkson's complaint are untimely. Clarkson filed his EEOC charge on July 30, 2024. (ECF No. 10-7, PageID.110.) Three hundred days prior to July 30, 2024, would be October 4, 2023. CMU's sole argument is that Clarkson's claim against CMU is untimely because it is based on actions that allegedly took place before October 4, 2023. (ECF No. 12, PageID.144.) Clarkson appears to concede that any discriminatory act would have had to occur after October 4, 2023, to be timely. (ECF No. 15, PageID.176) ("Based on the July 30, 2024 EEOC charge filing, the final decision and discriminatory act would have had to occur after October 4, 2024 [sic] to be timely."). This Court agrees and therefore dismisses Clarkson's claim against CMU insofar as it relies on events that allegedly took place before October 4, 2023.

Although the Court does not specifically address the allegations before October 4, 2023, the parties dispute whether the allegations concerning Clarkson's fall 2023 class occurred before October 4, 2023. Therefore, the Court will address the allegations related to Clarkson's fall 2023 class. Clarkson asserts that his fall 2023 class was cancelled because of low enrollment which was "directly [related] to Defendants' efforts to prevent students from taking Professor Bird's class." (ECF No. 9, PageID.40.) However, if CMU discouraged students from taking Clarkson's class, that must have occurred before October 4, 2023. The fall 2023 class was "going to be cancelled for low enrollment" as of July 21, 2023. (ECF No. 10-6, PageID.108.) The latest possible date CMU could have decided whether Clarkson's fall 2023 class would run would have been the first day of the fall 2023 semester, which began in late August 2023. (ECF No. 12, PageID.149.)[1] If CMU discouraged students from taking Clarkson's class, that would have had to occur before late August 2023, well before the October 4, 2023, cutoff. For this reason, Clarkson fails to state a plausible claim that CMU discouraged students from taking his fall 2023 class.

[1] The Court takes judicial notice of the CMU fall 2023 academic calendar. Fed. R. Evid. 201 ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determine from sources whose accuracy cannot reasonably be questioned.").

Turning next to the timely allegations, there are three actions that allegedly occurred after October 4, 2023: (1) "Defendants persisted in discouraging enrollment in [Clarkson's] class," (2) "Defendants removed the class as an offering from Spring 2024 classes," and (3) "even after Defendants received the OCRIE report in April of 2024, which substantiated some of [Clarkson's] claims, they refused to take any action to rectify the discrimination CMU's employees perpetrated." (ECF No. 15, PageID.177.) These allegations, taken together, state a claim of discrimination after October 4, 2023.

Clarkson's allegation that Defendants persisted in discouraging enrollment, which led to the removal of his class, states a plausible claim for relief. Clarkson alleges that he "learned later that Defendants removed [his] class as an offering entirely for the Spring of 2024 without telling him." (ECF No. 9, PageID.41.) Clarkson also alleges that "Defendants continued to discourage student enrollment in Professor Bird's class." (*Id.* at 40.) Taking Clarkson's allegations in the light most favorable to him, CMU employees could have continued discouraging students from taking Clarkson's spring 2024 class after October 4, 2023, which could in turn have led to the class's cancellation. Clarkson makes specific allegations regarding Trommer-Beardslee's efforts to discourage enrollment in Clarkson's class. For example, Clarkson alleges that Trommer-Beardslee "asked students if they felt 'safe' with [Clarkson]" and referred to Clarkson as "just a guy"

who "teaches sometimes" to discredit Clarkson. (ECF No. 9, PageID.34, 36.) Comments like these could have discouraged students from taking Clarkson's class. If these types of comments continued after October 4, 2023, as Clarkson suggests they did, they could have played a role in reduced interest in Clarkson's class and its cancellation.

Similarly, Clarkson's allegation that CMU failed to respond to OCRIE's conclusion that "Trommer-Beardslee engaged in race-based discrimination" also states a claim. (ECF No. 9, PageID.41.) If an employer is aware of racial harassment and fails to implement prompt and appropriate corrective action, the employer may be liable. *Hafford v. Seidner*, 183 F.3d 506, 513 (6th Cir. 1999). If OCRIE determined that Clarkson suffered discrimination, and CMU failed to respond to this, CMU may have violated Title VII. Thus, Clarkson states a claim.

CMU's counterarguments are unavailing. First, CMU argues that the EEOC Charge of Discrimination "never stated or suggested that Defendants prevented or discouraged students from taking his class." (ECF No. 12, PageID.150.) However, this takes an overly narrow view of the EEOC Charge. CMU correctly states that "a plaintiff may file suit only in regard to the claims asserted in the EEOC charge and those within the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Scott v. Eastman Chem. Co.,* 275 F. App'x 466, 471 (6th Cir. 2008). "The requirement, however, is not meant to be overly

rigid, nor should it 'result in the restriction of subsequent complaints based on procedural technicalities or the failure of the charges to contain the exact wording which might be required in a judicial pleading.'" *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006) (quoting *EEOC v. McCall Printing Co.*, 633 F.2d 1232, 1235 (6th Cir.1980)). "As a result, the EEOC complaint should be liberally construed to encompass all claims 'reasonably expected to grow out of the charge of discrimination.'" *Id.* (citations omitted). "The determinative inquiry . . . is whether [plaintiff] alleged sufficient facts in his EEOC Complaint to put the EEOC on notice of his [claims]." *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004).

Here, Clarkson's EEOC Charge included the allegation that he "found out later in fall of 2024 that my class wasn't even being offered in spring 2024." (ECF No. 10-7, PageID.111.) Although Clarkson's EEOC Charge does not expressly state that CMU discouraged students from taking his spring 2024 class, the allegation that Clarkson's spring 2024 class was not being offered is sufficient to put the EEOC and CMU on notice of the actions alleged in the complaint, including discouraging students to enroll, which may have led to the spring 2024 class not being offered. Therefore, the Court holds that Clarkson's allegation that CMU discouraged students from taking his class was within the scope of the

EEOC investigation or reasonably expected to grow out of the Charge of Discrimination.

Next, CMU asserts that Clarkson "must have known that if DAN 126, the *beginner* Hip-Hop dance class, was cancelled for the 2023 Fall Semester due to low enrollment, there would be insufficient student interest/eligibility to run the *advanced* Hip-Hop dance class, DAN 226, the following semester." (ECF No. 12, PageID.152.) But CMU has not shown how this must be true. The pleadings do not show that DAN 126 is a prerequisite to DAN 226. Moreover, even if it is, further factual development may reveal that students who took the prerequisite in previous years could be eligible to take the class in 2024. The Court cannot determine that there is no set of facts which could be developed that would "plausibly give rise to an entitlement to relief." *Bates*, 958 F.3d at 480.

Finally, CMU argues that Armistead's email from July 21, 2023, "clearly communicated to Plaintiff that DAN 126 was cancelled and that Plaintiff would not be reappointed." (ECF No. 12, PageID.145.) Even considering Armistead's email, the Court still finds Clarkson's claim plausible. Armistead's email states that the department "may reach out to [Clarkson] directly" if "the situation with enrollment and need for faculty to teach DAN 126 changes for fall, 2023 or *spring, 2024*." (ECF 10-6, PageID.108) (emphasis added). Although Armistead did make it clear that Clarkson would "not be reappointed for the fall semester," the letter does not

make an express determination regarding the spring 2024 semester and leaves open the possibility that Clarkson will return in spring 2024. (*Id.*) Additionally, as CMU's exhibits make clear, it was common for appointment letters for the spring semesters to go out in November or later. (ECF No. 10-2, PageID.80, 88, 91.) Thus, it is plausible that any discouragement of students from enrolling in Clarkson's class and any decision on whether to run Clarkson's class could have occurred after October 4, 2023.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** CMU's Motion for Judgment on the Pleadings insofar as it seeks dismissal of claims stemming from actions after October 4, 2023. (ECF No. 12.)

The Court **GRANTS** CMU's Motion for Judgment on the Pleadings insofar as it seeks dismissal of claims stemming from actions before October 4, 2023.

s/Michael C. Martin
Hon. Michael C. Martin
United States District Judge

Dated: November 18, 2026